IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

      v.

THOMAS RAY HUDSON,

      Defendant.

Case No.: 24-cr-119-jdp

GOVERNMENT'S SENTENCING MEMORANDUM

I.     Introduction

The defendant is a true internet predator. While he engaged in multiple forms of online exploitation as described in detail below, he had a particular interest in Minor Victim 1 (MV1), a then-13-year-old girl living in Western Wisconsin. In August, he flew across the country to meet her. Thankfully that attempt was thwarted when he could not find her home and got stranded in Minneapolis. He was later identified, charged, and arrested. His electronics were searched, and multiple additional victims were identified.

He has now been convicted of producing child pornography, in violation of 18 U.S.C. § 2251(a). The guidelines for his offense are straight life, capped at 360 months by the charge in the indictment. For the reasons below, the government believes a sentence of 22 years, followed by a lifetime period of supervised release, is sufficient but not greater than necessary to reflect the gravity of the defendant's crimes and to meet the other sentencing factors under 18 U.S.C. § 3553(a).

II.   Factual Background

<u>Identification of MV1</u>

In August 2024, the Federal Bureau of Investigation (FBI) received a tip indicating an individual identified only as Tyler, age 27-36, "intends to assault victim" and provided an address in Western Wisconsin.[1] The tip continued, "he took a flight from washington to minnesota and is currently homeless with a tent, willing to pitch a tent outside his targets' homes[.]" Additionally, the tipster indicated the victim and subject exchanged sexually explicit photos and images of a 10-year-old girl. The tip and the victim's Instagram account were forwarded to the Burnett County Sheriff's Office (BCSO), who began trying to identify the victim.

Approximately five days later, the FBI received a second apparently related tip with further information. The tipster stated in part, "Victims were coerced into sending nude content to the perpetrator. Victims were then blackmailed by the perpetrator if they refused to send content with threats of violence to themselves or family or exposure on social media[.]" The tipster provided identifying information for two victims: one victim in Wisconsin and one victim in Kentucky. The tipster identified the suspect as "Tyler," age 24, in Minneapolis, Minnesota.

Using this information, law enforcement identified MV1, then 13 years old. Law enforcement interviewed MV1, who said she met a man named "Tai" on Instagram. Law enforcement searched MV1's phone and found approximately 424 messages between the defendant and the victim from July 31, 2024, to August 9, 2024, including

---

[1] The FBI was able to ID the tipster as an associate of Hudson who was a registered sex offender. The tipster was arrested by Georgia Department of Community Supervision for violating his probation by having unsupervised contact with a minor.

some where the victim and the defendant exchanged sexually explicit photographs and videos.

Agents also located chats where the defendant expressed an intent to meet the victim and an approximately 44 second video, that appears to be taken from inside an airplane, where someone can be heard saying in part "Welcome to the city of Minneapolis[.]"

## Identification of MV2

Minor Victim 2 (MV2) was identified as a then 11-year-old female residing in Kentucky. In a forensic interview, MV2 reported that she met the defendant who identified himself as "Tyler" on Instagram during the summer of 2024. Initially, the defendant told her he was 14, but MV2 did not believe him. He then said he was 24. MV2 told the defendant she was 11 years old.

She further said that her conversations with the defendant started out normally, but then he started sending her explicit images of girls between 5 and 6 years old. The defendant and a person she knew as "Jackson"[2] asked MV2 to post nude photographs in their group chats on Instagram and Telegram. MV2 posted multiple nude images with and without her face in the images. This same group would also do video calls in which they would comment on MV2's appearance. According to MV2, the defendant started a group chat with MV1 and MV2 and was "sexually assaulting" MV1 "through words." MV2 was kicked out of the group chat because she kept telling

---

[2] The FBI has identified "Jackson" as an approximately 37-year-old male in Alabama. The government is not identifying in this memorandum to protect ongoing investigations.

3

the defendant to stop talking sexually to MV1 in the group chat. The defendant sent Child Sexual Assault Material (CSAM) images and videos of MV1 to MV2.

### Identification of other Victims

In December 2024, the defendant was arrested in Mississippi. Agents seized two cell phones and a laptop. By analyzing the phones, agents identified seven other victims, ranging in ages from approximately 10-14. Agents were able to determine that the defendant produced images of Minor Victims 3-5 and received images of Minor Victims 6-9. Numerous other girls found on the defendant's and his cohort's devices remain unidentified. According to the National Center for Missing and Exploited Children (NCMEC), only 55 of the approximately 1051 suspected CSAM images/videos on the defendant's devices were part of an identified series.

When interviewed following his arrest, the defendant admitted to being the head administrator of a group on Instagram called "good xxxxx."[3] During live sessions in this group, numerous users would instruct minors to create CSAM and comment on what they were doing. The defendant admitted that at least one of the girls, MV9, only 10 years old, was "pressured" into engaging in sexually explicit conduct in the group chat. The defendant admitted to receiving CSAM from over 50 victims and further admitted to sending explicit pictures or videos of himself to approximately half of them.

In addition to all the live victims the defendant interacted with, he also possessed images and videos of children from 28 known series identified by NCMEC.

---

[3] This group is identified in the PSR. The government is not including the full name here as investigation into its members is ongoing.

III.     Sentencing Argument

The government requests a below-guideline sentence of 22 years in custody. This sentence is sufficient but not greater than necessary to satisfy the purposes of sentencing, as set forth in 18 U.S.C. § 3553(a). Nothing suggests a sentence lower than that is appropriate in this case.

    A.     The Nature and Circumstances of the Offense and Characteristics of the Defendant

The defendant is truly an online predator, the extent of which is difficult to fully describe. The defendant had one-on-one "relationships" with some of the girls, as shown by direct Snapchat conversations with MV1, the thousands of messages on Instagram with MV5, then 12 years old, and the numerous images that MV8, then 12 years old, sent the defendant on Snapchat.

He had group chats and video calls with another adult and minor victims, as described by MV2. In order to facilitate relationships with these minors, he repeatedly lied about his age, originally telling at least one of his victims that he was 14. He finally "confessed" to being 24, still lying about his age by a full ten years.

He joined with other like-minded adult men to repeatedly target and sexually exploit an indeterminable number of preteen and teenage girls. As noted above, MV2 identified a person called "Jackson" who was involved in her exploitation with the defendant. Agents were able to identify Jackson and ultimately seized and searched his phone. On it, they found Telegram messages revealing that "Jackson," the defendant, and others were coordinating to target minors on Instagram, getting them to produce CSAM, and then trading it among each other. Not only did the defendant repeatedly

5

exchange CSAM with group members, he sent it to other minors, likely attempting to groom them into sending him images also.

The defendant was also an online administrator of a group dedicated to child exploitation. This group, called "good xxxxx," had hundreds of members. It seems this is possibly the group where MV7 was recorded masturbating while 397 viewers looked on. It was also where MV9, then only 10 years old, was pressured into creating live CSAM content.

He was also involved in a video group called sn*****.[4] In this group, the defendant exploited MV3, instructing her to insert a toothbrush into her vagina. Unbeknownst to MV3, the defendant was recording her at the time. Members of this group also encouraged MV3 to ask her friends to join the group.

The defendant was also involved in a group chat on Telegram that involved MV6, who reported that a person called "Jordan" threatened her with violence if she did not create a Telegram group and record CSAM for him. Jordan also added her to a Telegram group chat that included the defendant.

The defendant himself coerced MV1 into sending him CSAM, threatening to tell her mom that she was "sending naked pictures and videos to old men" if MV1 didn't send the defendant a video of herself engaged in sexually explicit conduct.

If there was a way to exploit children online, this defendant seemingly did it. From one-on-one contact, small group contact, large group contact, chat groups, video groups, threats, and even possession of previously identified NCMEC victims. The

---

[4] This group is identified in the PSR. The government is not putting into this memo as investigation into its members is ongoing.

defendant's offense was not a one-time event. It was not even a multiple-time event with a single victim. This defendant exploited multiple children, some as young as ten years old, on multiple occasions.

But for seemingly good fortune, this offense could have been even worse than it already is. The defendant flew from his home state to Minneapolis to meet up with MV1. He said he was "coming for her tomorrow" and recorded himself on the plane to Minneapolis.

The seriousness of this crime is also shown by its impact on its victims. MV1 attempted to commit suicide two times in the aftermath of this investigation. She reported that she thought the defendant was her friend and was upset by the loss of the friendship. MV6 also attempted suicide after being interviewed about her involvement in the defendant's conduct.

MV6's mother related her child's fear that the defendant will kidnap, abuse, and murder MV6. MV6 herself wrote, "we don't want anyone to go through what we did."

The seriousness of the offense can also be seen by the impact on not only the defendant's victims, but the victims' family members. MV6's statement seems to indicate that the defendant's conduct either created or aggravated her father's heart condition.

The images that the defendant was involved in creating were shared amongst numerous people and sent all over the internet and have already been the subject of NCMEC Cybertips. The victims will now have to deal with others seeing their images for the rest of their lives.

7

B.     Respect for the Law, Just Punishment, Adequate Deterrence, and
       Protection of the Public

A 22-year sentence in this case reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Given the defendant's conduct in this case as detailed above, anything lower would not satisfy the goals of sentencing.

A 22-year sentence is also appropriate given the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 438 U.S. 84, 103 (2003). The fact that the defendant will be subject to restrictions and supervised release when he gets out of prison does not offer any guarantee that he will not offend again. *See United States v. Irey*, 612 F.3d 1160, 1215 (11th Cir. 2010) (discussing studies and other data showing that "supervised release . . . often fails to prevent sex offender recidivism"). In short, "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does." *Id.* at 1216.

The sentence should deter the defendant from engaging in further criminal behavior, deter others from attempting to commit such awful crimes against children, and protect the public by ensuring that the defendant does not have another opportunity to victimize other children. A lengthy sentence will accomplish this goal. Based on the egregious and lengthy nature of the defendant's criminal misconduct and his admitted interest in children, there is a compelling need to deter future similar conduct by him, as well as other like-minded individuals with an interest in children. There is no reason to believe that anything but a lengthy term in prison will deter him from committing similar offenses in the future.

This defendant, through the crimes documented in this case, has shown himself to be a deceitful, serial offender with no demonstrated ability or attempts to cease or control his behavior. He repeatedly victimized multiple girls with no sign that he planned to stop before he was caught. To accomplish the goals of sentencing – particularly deterrence and protection of the public – the defendant must be sentenced to a truly significant term of imprisonment. Here that term is 22 years.

IV. Conclusion

For all the foregoing reasons, the government respectfully recommends that this Court sentence the defendant to 22 years in prison to be followed by a lifetime of supervised release. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Dated: <u>September 17, 2025.</u>

        Respectfully submitted,

        CHADWICK M. ELGERSMA
        Acting United States Attorney

By:    /s/
        ELIZABETH ALTMAN
        Assistant United States Attorney